OPINION. LeMire, Judge: The first question presented is whether in the taxable years 1944 and 1945 petitioner is entitled to deduct premiums paid on certain policies of life insurance assigned to it as collateral security as ordinary and necessary business expenses under section 23 (a) (1) (A) of the Internal Revenue Code. Petitioner contends that, since the insurance premiums were paid to protect its security in the hope of ultimately recovering as much of the indebtedness as possible, the expenditures are deductible as ordinary and necessary business expenses under the rationale of Dominion National Bank, 26 B. T. A. 421, and First Nat. Bank & Trust Co. of Tulsa v. Jones, 53 F. Supp. 842, affd. 143 F. 2d 652. In our opinion the above-cited cases establish the principle that insurance premiums, paid by a creditor to whom a debtor has assigned an insurance policy on the debtor’s life as security, are deductible as ordinary and necessary business expenses where the payments are made with the hope of recovery of the full amount of the indebtedness. The respondent acquiesced in the result reached in the Dominion National Bank case, supra (XI-2 C. B. 3), on the ground that nothing could have been collected from the debtor, and the unpaid debt itself exceeded the cash surrender value of the policies, and not for the reasons stated by this Court. It is the contention of the respondent that such insurance premiums are not deductible as a matter of right, but their deductibility depends upon whether the taxpayer has a right to reimbursement, and whether in the year of payment of the premium the right is worthless. I. T. 2867, XIV-1 C. B. 291 (1935), modifying I. T. 1511, 1-2 C. B. 88 (1922), in accordance with G. C. M. 14375, XIV-1 C. B. 52 (1935). It is then argued that the Dominion Bank case is distinguishable, since the unpaid debt exceeded the cash surrender value of the policies, and, whereas in the instant case the debtors were all discharged in bankruptcy and their indebtedness to the Kanawha National Bank had been charged to profit and loss prior to the consolidation with petitioner, the latter’s base was zero. Hence, it is said that as the cash surrender value less the basis of the debt is in excess of the premiums advanced, there is reasonable hope or expectancy of the repayment of the premiums, and the right is not worthless. Assuming, arguendo, that petitioner had a zero basis for certain purposes, we think such fact is unimportant here. Concededly, neither the charge-off nor the discharge of the debtor in bankruptcy had the effect of canceling the indebtedness. The petitioner had the right to protect its security by keeping the insurance policies alive by the payment of premiums in the hope of recovering as much of the debt as possible. We hold that the facts presented in the instant case bring it within the ambit of Dominion National Bank, supra, and on this issue we sustain the petitioner. The second question presented is whether petitioner realized taxable income in 1945 on recoveries of portions of bad debts charged off to profit and loss on account of partial worthlessness and allowed as deductions in the prior years. In accordance with their agreement of September 17, 1935, petitioner in 1945 received from M. Boiarsky payments totaling $26,107.60 on the principal of the latter’s indebtedness. Of this total amount petitioner did not report as income in 1945 the sum of $20,957.50 on the ground that such sum was properly excludible from gross income under the provisions of section 22 (b) (12) of the Internal Revenue Code.[2] Respondent treated the $20,-957.50 as taxable income and determined that $17,897.50 of that recovery was subject to income tax only and the remaining $3,060 was subject to both income and excess profits taxes. A recovery of bad debts deducted and allowed in prior years except as provided in section 22 (b) (12), which was added by section 116 (a) of the Revenue Act of 1942, and made retroactive to all prior taxable years, results in taxable income. Under that section, amounts attributable to the recovery of a bad debt are not includible in gross income if the prior deduction allowed for such item did not reduce the taxpayer’s income tax liability. Accordingly, petitioner, in order to prevail, must satisfactorily establish that the $20,957.50 recovered on the Boiarsky indebtedness in 1945 is attributable to amounts previously deducted and allowed as bad debts in prior years without any tax benefit. On June 30, 1934, petitioner, at the direction of supervisory banking authorities, charged off to profit and loss the sum of $70,000 on account of the partial worthlessness of Boiarsky’s indebtedness of $120,760.60. Respondent subsequently allowed petitioner this deduction for the year 1934. On September 17, 1935, in order to enable Boiarsky to avert placing himself in bankruptcy, petitioner and Boiarsky entered into an agreement in which it was agreed that “if and when it [petitioner] shall have received full payment of the indebtedness [therein agreed as totaling $53,010.60] * * * it will fully release and discharge the said M. Boiarsky and/or his estate from the indebtedness” of $80,808.83, which represents the prior 1934 charge-off of $70,000, plus unpaid accrued interest of $10,808.83. Respondent contends that the legal effect of the 1935 agreement was in the nature of a novation limiting Boiarsky’s indebtedness to the agreed amount of $53,010.60, which was paid in full prior to September 25, 1945. Respondent further contends that the petitioner has failed to establish that the subsequent charge-offs in 1938, 1939, and 1941 in the total amount of $20,957.50, which were claimed and allowed in those years, were without tax benefit. We agree that upon this record the petitioner has wholly failed to carry its burden of showing that the prior deductions in the aggregate amount of $20,957.50, which were allowed for the years 1938, 1939, and 1941, were without tax benefit. So holding, it is unnecessary for us to determine the legal effect of the September 17, 1935, agreement. We, therefore, hold that respondent did not err in including in gross income the sum of $20,957.50, recovered by petitioner in the taxable year 1945 on the Boiarsky indebtedness. On this issue we sustain the respondent. The final question presented is whether in computing excess profits net income the deduction for charitable contributions made by petitioner in 1945 is limited to 5 per cent of the excess profits net income computed under section 711 (a) (2) of the Internal Revenue Code before deduction of charitable contributions. During the year 1945 petitioner made charitable contributions in the total amount of $23,250, which amount was allowed by the respondent for purposes of computing petitioner’s normal tax and surtax net income. For the purpose of determining petitioner’s excess profits tax liability, respondent allowed a deduction for charitable contributions in the sum of $15,092.99, or 5 per cent of the excess profits net income computed without regard to the deduction for charitable contributions, thereby increasing excess profits net income by the amount of $8,156.01. The petitioner contends that the case of Gus Blass Co., 9 T. C. 15, appeal dismissed 168 F. 2d 833, supports its position and is a controlling authority. We there held that in computing excess profits net income for the fiscal year ending January 31, 1941, the deduction for charitable contributions is the same as that allowed in computing the income tax liability and is not limited to 5 per cent of the excess profits net income, computed under section 711 (a) (1), before deduction of charitable contributions. The fact that petitioner uses the invested capital method under section 711 (a) (2), and its taxable year is 1945, furnishes no basis on which to distinguish the Blass case. supra. The respondent argues that when Congress amended the Code in 1941 by adding subparagraph (G) to section 711 (a) (1) and subpar-agraph (I) to section 711 (a) (2), which provide: In determining any deduction the amount of which is limited to a percentage of the taxpayer’s net income (or net income from the property), such net income (or net income from the property) shall be computed without regard to tl>" deduction on account of the tax imposed by this subchapter. It indicated a legislative intent to limit the charitable deductions for the purpose of computing excess profits net income to the net income as adjusted under section 711 (a) (2). Section 206 (b) of the Revenue Act of 1942 repealed subparagraphs (G) and (I), effective under section 201 for the years beginning after December 31, 1941, because under that Act the excess profits tax could not be used as a deduction. See 7A Mertens, Law of Federal Income Taxation, §42.33. This argument of respondent, based on legislative history, is not convincing. In the taxable year 1945, whether the excess profits tax is computed under either the income or invested capital method of credit, the starting point is the normal tax net income used for the purpose of computing normal income tax as in the Blass case, supra, and hence, that decision is controlling. We, therefore, hold that in computing petitioner’s excess profits net income for 1945 the respondent erred in limiting the charitable deductions to the amount of $15,092.99, thereby increasing excess profits net income by the amount of $8,156.01. On this issue we sustain the petitioner. Decision will be entered under Rule 50. SEC. 22. GROSS INCOME. * * * * * * * (b) Exclusions from Gross Incomb. — The following Items shall not be Included In gross Income and shall be exempt from taxation under this chapter: * * * * * * * (12) RECOVER! OF BAD DEBTS, PRIOR TAXES, AND DELINQUENCY AMOUNTS.-Income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount. For the purposes of this paragraph: (A) Definition of bad debt. — The term “bad debt” means a debt on account of worthlessness or partial worthlessness of which a deduction was allowed for a prior taxable year. * * * * * * * (D) Definition of recovery exclusion. — The term “recovery exclusion”, with respect to a bad debt, prior tax, or delinquency amount, means the amount, determined in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, of the deductions or credits allowed, on account of such bad debt, prior ■tax, or delinquency amount, which did not result in a reduction of the taxpayer’s tax under this chapter (not including the tax under section 102) or corresponding provisions of prior revenue laws, reduced by the amount excludible in previous taxable years with respect to such debt, tax, or amount under this paragraph.